MAUREEN BAXTER, EXECUTRIX (ESTATE OF MARY
GREENE COVE) *v.* CARDIOLOGY ASSOCIATES OF
NEW HAVEN, P.C., ET AL.
(AC 14999)

O'Connell, Lavery and Spear, Js.

Argued May 27—officially released August 26, 1997

*Barbara E. Crowley*, with whom was *John R. McGrail*, for the appellants-appellees (named defendant et al.).

*Ernest F. Teitell*, with whom were *Mario Dinatale* and, on the brief, *Jonathan L. Mannina*, for the appellee-appellant (plaintiff).

*Opinion*

O'CONNELL, J. This is a medical malpractice case in which the defendants appeal from a judgment in favor of the plaintiff following a jury trial. The defendants claim that the trial court improperly (1) held that apportionment of liability with regard to a settled or released person was not an issue in the case, (2) refused to allow the defendants to introduce a portion of a deposition into evidence, and (3) precluded one of the defendants from testifying as to his reliance on a hospital resident. The judgment is affirmed.

The jury reasonably could have found the following facts. The plaintiff is the executrix of the estate of her deceased mother. The plaintiff's decedent was admitted to Yale-New Haven Hospital for a cardiac catheterization, a diagnostic procedure, during the course of which a blood vessel was perforated, permitting blood to escape into the retroperitoneal area. No complaint was made concerning the fact of perforation because that is a recognized risk of the procedure and may occur without negligence. After the procedure was performed, the defendant Arthur Seltzer, the cardiologist who had performed the procedure, failed to monitor, diagnose and treat the decedent's condition in that he failed to order and infuse blood in a timely fashion and in adequate amounts. The decedent ultimately bled to death.

Prior to trial, the plaintiff settled her claim against the hospital and withdrew her claim against it and certain defendants. Thus, when the trial commenced the only

defendants were Seltzer and the medical group Cardiology Associates of New Haven, P.C., of which Seltzer was a member. Additional facts are included in the analysis of individual issues.

I

The defendants first complain that the trial court improperly ruled that the jury could not consider apportionment of liability against the hospital.[1] Because the plaintiff had settled her case against the hospital, the hospital became a "settled or released person." A settled or released person under General Statutes § 52-572h (n) must be a person, not necessarily a party, who received a release of liability. *Donner* v. *Kearse*, 234 Conn. 660, 672, 662 A.2d 1269 (1995).

The trial court ruled that if the defendants wanted to seek apportionment against the hospital as "a released or settled party, they must raise that issue in a definitive fashion and as to that issue they had the burden of proof which, because of the nature of this case, would require expert medical testimony."[2]

---

[1] General Statutes § 52-572h (f) provides: "The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section; and (5) the percentage of such negligence attributable to the claimant."

General Statutes § 52-572h (n) provides: "A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section."

[2] The court explained: "The position that I've taken in the past, and I'm going to follow it in this case is . . . that the party claiming a right to allocation must advise me and this should be made available to the plaintiff, number one, the way in which the remaining defendant claims that the

The defendants disagree and contend that they have no obligation to raise the issue with respect to the hospital's liability for apportionment purposes nor do they have any burden of proof in regard to the hospital's apportionment liability. The defendants take the position that the question of apportionment and liability of a settled or released party arises automatically by virtue of the statute. Consequently, the defendants refused to answer the court's numerous inquiries concerning whether they intended to seek apportionment until examination of the plaintiff's final witness, when they conceded that they were seeking apportionment.

The defendants rely on *Donner* v. *Kearse*, supra, 234 Conn. 669, for the proposition that it is mandatory for the trier of fact to consider the negligence of a settled or released person. The *Kearse* case; id., 666–70; traces the development of apportionment among joint tortfeasors from the common-law doctrine, which did not generally permit any contribution among joint tortfeasors, through Tort Reform I; Public Acts 1986, No. 86-338; and Tort Reform II; Public Acts 1987, No. 87-227; to our present statute, General Statutes § 52-572h (c) (d) and (e).[3]

---

settled or released party is negligent so as to give us a clue as to what the evidence is to—that we are to look for in the trial of the case. Secondly, with respect to establishing negligence of the party—settled or released party that is, the party claiming allocation has, I'm going to use the word, the burden of proof with respect to establishing negligence on the part of that particular person."

[3] General Statutes § 52-572h provides in relevant part: "(c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is

Under our present statute, where the damages are proximately caused by the negligence of more than one party, each party is liable only for his proportionate share. The statute "[s]ets forth two classes of persons whose negligence must be considered by the trier of fact: (1) the 'parties' to the action; and (2) 'settled or released persons,' as that term is illuminated in subsection (n)."[4] *Donner* v. *Kearse*, supra, 234 Conn. 671. In the present case, we are concerned with the apportionment liability of the hospital as a "settled or released person."

We agree with the defendant that a primary purpose of enacting the statute was to change the common law of joint and several liability such that a defendant would be liable only for that proportion of the damages for which he was responsible. See 30 H.R. Proc., 1987 Sess. Pt. 16, pp. 5689–97, 5703–5709 and 5715–19. Subsection (f) of § 52-572h prescribes the method by which the fact finder will determine the percentage of negligence attributable to a party.[5] We also agree with the defendants that to determine the percentage of liability attributed to a settled or released person, the jury must first consider the negligence or lack thereof of the settled or released person.

We do not, however, agree with the defendants that the statute requires that the jury automatically consider

the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party. . . ."

[4] See footnote 1.

[5] See footnote 1.

the issue of apportionment of the hospital's negligence. As with any issue, the trial court must not submit the issue of the settled person's negligence to the jury unless there is evidence to support it. See *Batick* v. *Seymour*, 186 Conn. 632, 641, 443 A.2d 471 (1982). Because this is a medical malpractice case, any evidence of the hospital's negligence would have to come from qualified medical experts. *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996).

The Supreme Court of the state of Washington was confronted with a similar issue in *Adcox* v. *Children's Orthopedic Hospital & Medical Center*, 123 Wash. 2d 15, 25–26, 864 P.2d 921 (1993). The Washington Supreme Court held that "[the Washington apportionment statute] is not self-executing. It does not automatically apply to each case where more than one entity could theoretically be at fault. Either the plaintiff or the defendant must present evidence of another entity's fault to invoke the statute's allocation procedure. *Without a claim that more than one party is at fault, and sufficient evidence to support that claim,* the trial judge cannot submit the issue of allocation to the jury. Indeed, it would be improper for the judge to allow the jury to allocate fault without such evidence. If the plaintiff signals an intention to present evidence of fault solely against one defendant, as in this case, it is incumbent upon the defendant to provide proof that more than one entity was at fault. The Hospital failed to present any evidence of the possible negligence of [the treating physicians]. Instead, the Hospital chose the legal theory that there was no negligence in this case. Moreover, the Hospital did not even take a clear position on the issue of whether allocation of fault was required under Washington's statutes. The Hospital cannot now be heard to complain it was not afforded allocation." (Emphasis added.) Id.

The defendants claim that the testimony of Howard Winer, a plaintiff's witness, shows that the hospital was negligent.[6] The trial court properly held that, from Winer's testimony, the jury could not reasonably have concluded that the hospital was negligent. The testimony in question concerns causation, not negligence. On cross-examination, Winer was allowed to give his opinion concerning the standard of care of the hospital. This testimony, however, was permitted by the trial court on the representation of defense counsel that it was being offered solely for purposes of credibility, not apportionment.

The defendants argue that the trial court, in effect, held that it was a matter of judicial discretion as to whether a jury may consider the negligence of a settled or released person in apportioning damages. We do not agree with this interpretation of the trial court's remarks. We interpret the trial court's comments to mean that the party claiming apportionment had a duty to advise the court and the plaintiff that it intended to claim apportionment and by so doing it assumed the burden of proving the negligence of the released person. See *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 9, 327 A.2d 583 (1973). The defendants' argument that apportionment is automatic would require the trial court to instruct the jury on apportionment even if the evidence would not have supported a finding of negligence on the part of the settled party. In *Seymour* v. *Garcia*, 24 Conn. App. 446, 453–54, 589 A.2d 7 (1991), aff'd, 221 Conn. 473, 604 A.2d 1304 (1992), this court affirmed the trial court's refusal to instruct a jury on apportionment

---

[6] The pertinent part of Winer's testimony was as follows: "I would estimate that if her, she'd received blood, an adequate amount of blood before Dr. Seltzer had arrived, that it's overwhelmingly likely that she would have survived. That by 9 there was a fifty percent chance of her surviving. By the time she went to the operating room there was probably a twenty percent chance of her surviving."

under those circumstances where there was insufficient evidence to warrant such an instruction.

The defendants next contend that the trial court improperly disallowed apportionment evidence because of the defendants' failure to give timely notice to the court and to the plaintiff that they were seeking apportionment against the hospital. Our statute is silent as to any requirement of notice.

As a consequence of its ruling, the trial court subsequently excluded evidence that the defendants attempted to offer on the issue of the hospital's negligence. In effect, the trial court ruled that, having failed to disclose that it was seeking apportionment, it was too late at the conclusion of the plaintiff's case to introduce the element of apportionment for the first time. A trial court has broad discretion in determining the admissibility of evidence. *Voluntown* v. *Rytman*, 21 Conn. App. 275, 282, 573 A.2d 336, cert. denied, 215 Conn. 818, 576 A.2d 548 (1990). In the present case, the defendants necessarily knew that apportionment could be an issue in the case. During the discovery stage of the proceeding, the defendants did not claim that they intended to seek apportionment. Although the defendants' experts apparently held opinions concerning possible negligence on the part of the hospital, the disclosures of the nature of their testimony did not indicate that they would testify as to the hospital's negligence.

After the commencement of trial, the defendants continued this strategy, consistently refusing to claim that they were seeking apportionment. Although on several occasions the trial court inquired as to whether the defendants intended to claim apportionment, the defendants never asserted a definite claim for apportionment until they were cross-examining Winer at the conclusion

of the plaintiff's case-in-chief. At that stage in the proceedings, when the plaintiff had already presented her case, it would have been unfairly prejudicial if the defendants had been permitted to claim apportionment against the hospital.

This issue has been considered by the courts of several other states. The New Jersey Supreme Court, interpreting a statute similar to the Connecticut apportionment statute; N.J. Stat. Ann. § 2A:15-5.2 (West 1987); held that "a non-settling defendant [does not have] free rein to assert the liability of a settling defendant without first providing the plaintiff with fair and timely notice. . . . Our system of discovery is designed to make available information that is reasonably calculated to lead to relevant evidence concerning the respective positions of the parties. . . . A litigation strategy that features surprise to the adversary is no longer tolerated." (Citations omitted.) *Young* v. *Latta*, 123 N.J. 584, 597, 589 A.2d 1020 (1991); see also *Adcox* v. *Children's Orthopedic Hospital & Medical Center*, supra, 123 Wash. 2d 15.

In *Young* v. *Latta*, supra, 123 N.J. 597, the trial court held that "a plaintiff should know as early in the case as possible whether a defendant will seek to prove the fault of a co-defendant. . . . A defendant who produces no expert report (whether its own or that of another party) and fails to allege well before trial the causative fault of a co-defendant may be precluded from asserting at trial that co-defendant's fault in the event of a settlement." (Citation omitted.)

The trial court in *Young* further concluded that "trial courts should not countenance delay—that is, the court should not permit the non-settler to wait until the last minute before alerting the court and the plaintiff's lawyer that the settler's conduct will be at issue. . . . [T]actics cannot be allowed to foil discovery . . . ." Id.,

597–98. In *Johnson* v. *Pratt & Whitney of Canada, Inc.*, 28 Cal. App. 4th 613, 626–27, 34 Cal. Rptr. 2d 26 (1994), the California Appellate Court affirmed the trial court's refusal to let the jury consider the issue of apportionment where the defendant repeatedly failed to provide information in response to the plaintiff's discovery request.

A plaintiff's preparation for trial may be substantially different if it knows that apportionment against a settled person is an issue in the case. We conclude that the trial court did not abuse its discretion in ruling that apportionment was not part of the case because the defendants did not explicitly claim that they were seeking it until virtually the close of the plaintiff's case.

## II

The defendants next allege that the trial court improperly refused to allow them to introduce into evidence those portions of Sherwin Kevy's deposition relating to possible negligence on the hospital's part. This issue arose near the completion of jury selection when the defendants filed a preliminary request to charge. This request, although claiming that the jury should apportion liability, did not identify the other party whom the defendants claimed was negligent nor did it identify the experts on whose testimony the defendants would rely to prove negligence. The next day, the trial court furnished the parties with a proposed jury instruction.[7] The thrust of the defendants' objection to the charge was that it improperly (1) required them to make a formal claim that another party was negligent and (2) imposed on them the burden of proving negligence on the part of the hospital. See part I of this opinion.

---

[7] The relevant portion of the court's proposed preliminary jury charge was as follows. "The defendant . . . claims that the settled or released person or party was negligent, which negligence caused the plaintiff's damages. As to this issue, the defendant . . . has the burden of proof."

The trial court asked the defendants to identify the expert witnesses whom they intended to call to prove that the hospital was negligent. The defendants objected on the ground that they had no duty to make an expert disclosure and that to require them to do so would unfairly mandate disclosure of their trial tactics.

The trial court explained how lack of information concerning the defendants' experts would impact unfairly on the plaintiff. In response, the defendants advised the court that they intended to use a portion of Kevy's deposition. Kevy had, at the defendants' objection, been precluded from testifying as a plaintiff's expert. The trial court declined to allow the defendants to read only a portion of Kevy's deposition but offered the defendants the option of reading Kevy's testimony in its entirety to the jury.[8] See Practice Book § 248 (1) (e).[9] The defendants rejected the court's offer, whereupon, on the basis of fundamental fairness the court denied the defendants' selective use of Kevy's deposition.

A

"The admissibility of a deposition into evidence under Practice Book § 248 is permissive in nature, leaving the ultimate determination to the trial judge." (Internal quotation marks omitted.) *Cahn* v. *Cahn*, 225 Conn. 666, 678, 626 A.2d 296 (1993). It is within the inherent discretion of the trial court to exclude a deposition if it is confusing and prejudicial. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 2.3.2, p. 22. "Rulings on such matters will be disturbed only upon a

---

[8] The trial court stated: "I should not divide the man's testimony. I mean if it's permitted to come in, it should come in all the way against your client as well as against the hospital or it shouldn't come in at all."

[9] Practice Book § 248 (1) (e) provides: "If only part of a deposition is offered in evidence by a party, an adverse party may require the party to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts."

showing of clear abuse of discretion. . . . The party making the claim of error has the burden of showing that the court clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 566, 525 A.2d 954 (1987). In the present case, the trial court found that the deposition testimony of Kevy concerning the negligence of the defendants and the negligence of the hospital was intertwined. The testimony was both favorable and unfavorable to the plaintiff and to the defendants. The trial court declined to allow the defendants to introduce only the selected portions favorable to them.

Under the circumstances, we conclude that the trial court did not clearly abuse its discretion in precluding the defendants from introducing into evidence only a portion of Kevy's deposition.

B

The day following the denial of the defendants' attempted use of a portion of Kevy's deposition statements, the defendants disclosed twelve experts, including Kevy, whom they intended to use against the hospital. The plaintiff moved to preclude these witnesses. During argument on the motion, the defendants continued to equivocate on whether they were seeking apportionment. They informed the court that they were not "raising" an apportionment claim but neither were they "abandoning" it.

The trial court granted the plaintiff's motion to preclude the witnesses because (1) the disclosure was untimely, (2) the defendants did not offer "good cause" for the delay and (3) the plaintiff would be prejudiced if disclosure at such a late stage in the proceedings were allowed. Additionally, the court found that the disclosure failed to "recite the specific substance of facts and opinion to which the expert is expected to

testify, nor [did] it contain a summary of the grounds for such opinion."[10] See Practice Book § 220 (D).[11]

Whether to allow a late disclosure is clearly within the discretion of the trial court. Examination of the record in this case does not disclose any reason for us to conclude that the trial court abused its discretion in precluding the defendants from calling as witnesses the experts listed in the defendants' untimely disclosure. Furthermore, the trial court properly held that the disclosure did not meet the requirements of Practice Book § 220 (D),[12] and the defendants do not contest the lack of compliance with the rules of practice.

## III

In their final claim, the defendants argue that the trial court improperly precluded them from questioning Seltzer concerning his reliance on the hospital resident to order blood on an expedited basis. Seltzer, one of the defendants, was called as a plaintiff's witness. During

[10] The trial court stated: "The use of Dr. Kevy as an expert witness was vigorously objected to by [the defendants] . . . and I did sustain [their] objection . . . which had the effect of depriving the plaintiff of the use of that witness, and I might say any decision that the plaintiff might have predicated on that fact. I feel that now to permit the very party who objected to the use of Dr. Kevy, to permit that party to now use it for some purpose that suits his present posture in the case would be unfair . . . ."

[11] Practice Book § 220 (D), as in effect at the time of the action here, provided: "In addition to and notwithstanding the provisions of subsections (A), (B) and (C) of this section, any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120 days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

[12] See footnote 11.

cross-examination, the defendants sought to ask Seltzer two questions concerning his subjective understanding of the procedures followed by hospital personnel in obtaining blood for the plaintiff's decedent.[13] The plaintiff objected on the ground that the defendants were trying to admit expert testimony concerning the hospital resident's standard of care. The court inquired as to the purpose of the questions, and the defendant explained that they were directed at determining Seltzer's subjective beliefs regarding reliance on the hospital staff to provide the blood needed by the decedent. The trial court sustained the plaintiff's objection on grounds of relevancy. The defendants contend, on appeal, that even though Seltzer was a physician, in answering these two questions, he would have been testifying not as an expert, but as a lay observer of the relevant events and as a party to the litigation. The defendants did not make a formal offer of proof as to what Seltzer's answers would have been if they had been allowed. The defendants rely on *Robinson* v. *Faulkner*, 163 Conn. 365, 372, 306 A.2d 857 (1972).[14]

"Evidence is admissible only if it is relevant. . . . The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 569, 657 A.2d 212 (1995). The two questions sought information that would be relevant only if it was later supported by expert testimony that a cardiologist would rely on a

[13] The two questions were: (1) "Doctor, did you have a right to expect that when ordering the blood that [the hospital resident] would do so on an expeditious basis?" (2) "Doctor, did you rely on [the hospital resident] to order blood in an expeditious fashion?"

[14] We view *Robinson* v. *Faulkner*, supra, 163 Conn. 365, as inapposite. Although our Supreme Court discusses exceptions to the general rule that witnesses must state facts and not opinions, there is nothing in the case that supports a claim that Seltzer's subjective beliefs were relevant.

resident to order blood on an expeditious basis. The defendants declined to furnish the court with assurance that they would furnish such expert evidence later in the case.

Regardless of whether the answers were categorized as expert or lay opinion, the information sought would have to have been relevant to be admissible. Under the circumstances of the case, the trial court did not abuse its discretion in excluding the questions.

The judgment is affirmed.

In this opinion the other judges concurred.