******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# DEPARTMENT OF SOCIAL SERVICES *v.*
# JUSTIN FREEMAN
## (AC 41561)

Keller, Bright and Sheldon, Js.

*Syllabus*

The plaintiff, the Department of Social Services, sought to recover damages from the defendant attorney for conversion in connection with the defendant's failure to comply with a child support lien against settlement proceeds of his client R's personal injury action. Because R owed child support arrearages for the children, the plaintiff sent notice to the defendant of a child support lien, directing him not to distribute any proceeds from the personal injury action without first complying with the lien. The lien notice was addressed to the defendant's correct street address but listed an incorrect zip code. Following the settlement of R's personal injury action, the defendant distributed the proceeds to himself, R and R's creditors, but did not pay any proceeds to the plaintiff toward R's child support arrearages. The plaintiff commenced this statutory (§ 52-362d) conversion action against the defendant to recover $9500.70 in child support still owed by R as a result of the defendant's failure to withhold that amount from the settlement proceeds to satisfy the lien. The defendant denied that he had received notice of the child support lien. In December, 2017, the plaintiff submitted its trial management report, which listed, as a fact witness, C, who was described as being the supervisor for customer service support with the United States Postal Service in Hartford. In the report, the plaintiff explained that C would testify that a letter mailed to the correct street address but the wrong zip code within Hartford would be delivered to the stated address but that it would take longer. In March, 2018, the defendant filed a motion in limine to preclude C's proposed testimony as improper expert testimony because the plaintiff had not filed an expert witness disclosure. Following a hearing on the motion held the day before the start of evidence, the trial court determined that, although C must be considered an expert witness, the plaintiff could file a late disclosure of expert witness, naming C as its expert. The court reasoned that the disclosure of C had been accomplished by the trial management report, and, therefore, there was no prejudice to the defendant. In addition, the court noted that, if the defendant were to find a rebuttal expert, it would permit him to file a late disclosure of that expert. The court thereafter permitted the defendant to name J as a rebuttal expert witness in a late disclosure. Following the trial, at which C and J testified, the jury returned a verdict in favor of the plaintiff, awarding it $9500.70, the amount of R's child support arrearages. On the defendant's appeal to this court, *held*:

1. The trial court did not abuse its discretion in permitting the plaintiff to file a late disclosure of C as an expert witness: contrary to the defendant's claim that that court ignored the requirements for expert witness disclosure set forth in the applicable rule of practice (§ 13-4) by allowing C to testify despite the late disclosure and that he was prejudiced thereby, the court, applying Practice Book § 13-4 (g) (4), considered the defendant's substantive knowledge of C's testimony, which had been conveyed to him three months before the trial in the plaintiff's trial management report, and, on that basis, concluded that the defendant was not prejudiced by the late disclosure of C as an expert; moreover, the defendant, who never sought to depose C or move for a continuance for that purpose after the disclosure was filed, failed to identify any aspect of the plaintiff's proof or his ability to meet it that was adversely affected by the late filing of the expert witness disclosure.

2. This court declined to review the defendant's claim that the trial court erred in allowing the plaintiff's counsel to question him, in the presence of the jury, as to a prior withdrawn conversion action that had been brought against him by an unrelated third party, the defendant having failed to preserve this claim for appellate review.

3. The trial court did not abuse its discretion in allowing the biological mothers of R's two minor children to testify as to R's child support

arrearages, the record having indicated that both mothers' testimony was relevant to an essential element of the plaintiff's case, as their testimony bore directly on the contested issue of whether child support arrearages were actually owed to each of them.

Argued November 13, 2019—officially released May 12, 2020

*Procedural History*

Action to recover damages for conversion, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. A. Susan Peck*, judge trial referee, denied the defendant's motion to preclude certain testimony; thereafter, the matter was tried to the jury; verdict and judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Jade Baldwin*, with whom, on the brief, was *Gerald M. Beaudoin*, for the appellant (defendant).

*Joan M. Andrews*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendant, Justin Freeman, a Hartford attorney, appeals from the judgment of the trial court rendered against him, after a jury trial, finding him liable for conversion and awarding damages to the plaintiff, the Department of Social Services. The judgment was based on the defendant's failure to comply with a child support lien against the settlement proceeds of a client's personal injury action, of which he allegedly had been given due notice, before distributing such proceeds to himself, his client's other creditors, and his client. The defendant, who claimed at trial that he had never been served with the notice of lien that the plaintiff alleged it had sent to him, asserts that the trial court erred by (1) allowing the plaintiff to disclose an expert witness immediately before the start of trial to support its claim that the notice of lien had likely been delivered to him because it had been mailed to the correct address, albeit not to the correct zip code, (2) allowing the plaintiff's counsel to question him before the jury as to a prior conversion action that had been brought against him by an unrelated third party, and (3) allowing the biological mothers of his client's two minor children to testify that his client owed them child support. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On May 8, 2010, Pedro Rivera was involved in a motor vehicle accident in which he sustained serious physical injuries. Rivera retained the defendant to represent him in a civil action against the driver of the motor vehicle that was involved in the accident. During the pendency of the action, Rivera was under a court order to pay child support for his two minor children.[1] As of May 12, 2012, Rivera had a combined child support delinquency of $12,500.70. Because Rivera owed child support arrearages for his two minor children, the plaintiff's Bureau of Child Support Enforcement sent notice to the defendant of a child support lien, directing him not to distribute any proceeds from the civil action without first complying with the lien.[2] The lien notice was addressed to the defendant's correct street address but listed an incorrect zip code. The notice was not returned to the sender.

In September, 2013, the defendant settled Rivera's civil action for $82,500. Upon receiving the proceeds of that settlement, the defendant paid $27,500 in attorney's fees, $2569.58 in litigation expenses, $5825.40 in insurance provider costs, and $12,700 in repayments to creditors for loans that Rivera had taken out while the action was pending. The defendant then paid the remaining $33,905.02 in settlement proceeds to Rivera, without paying anything to the plaintiff toward Rivera's child support arrearages.

As a result, the Support Enforcement Services Unit of the Judicial Branch, working in cooperation with the plaintiff to enforce delinquent parents' child support obligations, filed a motion in the Superior Court requesting that Rivera be held in contempt for failure to pay child support for his minor children. At the conclusion of the contempt proceeding, Rivera was found in contempt for failure to pay child support, and the state collected $3000 from him toward his arrearages, leaving him with a combined balance of $9500.70 in outstanding child support.[3] Thereafter, the plaintiff issued a demand to the defendant that he pay the balance of Rivera's combined child support arrearage, which the defendant refused.

Pursuant to General Statutes § 52-362d,[4] the plaintiff commenced the present action against the defendant to recover the remaining $9500.70 in child support still owed by Rivera because the defendant had failed to withhold that sum from the settlement proceeds of Rivera's civil action to satisfy the lien. In his amended answer and special defenses, the defendant denied, inter alia, that he ever received notice of the child support lien from the plaintiff.

On May 18, 2016, after the pleadings were closed, the defendant demanded a jury trial. On December 6, 2017, the plaintiff submitted its trial management report. The trial management report listed, as a fact witness, Michael Chiaro, whom it described as follows: "United States Postal Service, Supervisor, Customer Service Support, Hartford, CT." In the report, the plaintiff further explained that Chiaro, "[t]he United States Post Office Supervisor for Customer Service Support, Hartford, CT, will testify that a letter mailed to the correct street address but the wrong zip code within Hartford would still be delivered, it would just take longer."

On March 12, 2018, the defendant filed a motion in limine to preclude Chiaro's proposed testimony. The defendant argued that such testimony was inadmissible because it was "of an expert nature, offering technical and opinion testimony as an employee of the United States post office as to how he believes the mail would have been processed." The defendant argued that because no expert disclosure had been filed, he had not had an "opportunity to depose [the] expert and obtain a rebuttal *expert* . . . ." (Emphasis added.) On that basis, he argued that the testimony of Chiaro should be excluded as improper expert testimony. On March 20, 2018, the day before the start of evidence at trial, the court, *Hon. A. Susan Peck*, judge trial referee, heard oral argument on the defendant's motion to preclude Chiaro's testimony. The court ruled that Chiaro must be considered an expert witness based on the testimony that the plaintiff intended to elicit from him. It ruled, however, that the plaintiff could file a late disclosure of expert witness, naming Chiaro as its expert. The

court reasoned that disclosure of Chiaro had already been accomplished through the trial management report submitted December 6, 2017, and, therefore, there was no prejudice to the defendant. The court further noted that, if the defendant were able to find a rebuttal expert, it would also permit him to file a late disclosure of that expert. Ultimately, the defendant found a rebuttal expert—Joan Coleman, a retired employee of the United States Postal Service—whom the court permitted the defendant to name as his expert in a late disclosure.

At trial, Chiaro testified that he had spent thirty-three years working as an employee of the United States Postal Service in Hartford, twenty-three years of which he had spent working as a supervisor of customer service support. He testified that, in his role as supervisor of customer service support, he oversaw delivery operations and retail operations for the post office in Hartford. He further testified that he was "[v]ery familiar" with the operations of the Hartford post office, and then explained the process by which mail in that post office is processed, sorted, and delivered. During Chiaro's testimony, he explained that permission is required from the United States Postal Inspection Service before a postal employee can testify in court. Chiaro stated that he had received such permission to testify in this case. Ultimately, Chiaro opined that a piece of mail like the notice of lien letter at issue here, which listed the correct street address of the addressee but the incorrect zip code, ultimately would be delivered to the desired address.

At trial, the defendant's expert, Coleman, testified that she had spent twenty-six years working for the United States Postal Service, both in Bloomfield and in Hartford. She explained that she had begun her career as a carrier in Hartford; then she had transitioned to Bloomfield, where she worked as a clerk for six years; finally, she had returned to Hartford, where she worked as a mail processor for the remainder of her career. As a mail processor, the role in which she had worked for most of her career, Coleman's duties included placing mail into a stamp cancelling machine to cancel stamps or to cancel mail and running a mail separating program that separated the mail by destination of delivery. Coleman testified that the most important entry on any piece of mail is the zip code because that is how mail is processed and moved about when the post office is preparing to deliver it. Coleman testified that, in her expert opinion, a letter addressed to an individual at a business with the wrong zip code listed on it would not reach its intended destination.

On her cross-examination of Coleman, the plaintiff's counsel sought to challenge her testimony in three basic ways. First, she elicited evidence that Coleman's granddaughter was a friend of the defendant. Second, she

established that Coleman, unlike Chiaro, did not have permission from the United States Postal Service to testify in this case. Third, she sought to demonstrate that Coleman had lesser credentials than Chiaro because her expertise was in the processing of mail, not in its delivery.

Ultimately, on March 28, 2018, the jury returned a verdict in favor of the plaintiff, awarding it $9500.70, the exact amount of Rivera's combined child support arrearage for his two children. This appeal followed.

I

The defendant first claims that the trial court abused its discretion by allowing the plaintiff to disclose an expert witness immediately before the start of trial. Specifically, he claims that the court ignored the requirements for expert disclosure set forth in Practice Book § 13-4 by allowing the expert to testify despite the late disclosure, and, thus, he was prejudiced because he was neither afforded an opportunity to depose the plaintiff's "newly identified expert," nor given sufficient time to find a rebuttal expert of similar qualifications. The plaintiff disagrees, arguing principally that the defendant was not prejudiced by the trial court's decision because the plaintiff had disclosed the witness and fully described his proposed testimony in its trial management report three months before the start of the trial. We agree with the plaintiff that the trial court did not abuse its discretion by permitting the late disclosure.

The following additional facts are necessary to the resolution of this claim. On December 6, 2017, the plaintiff disclosed Chiaro as a fact witness in its trial management report. It was not until March 12, 2018, however, that the defendant filed a motion to preclude Chiaro's testimony. On March 20, 2018, the trial court heard oral argument on the motion. There, the defendant's counsel argued that the defendant had not had the opportunity to "develop his case from this expert testimony and what's to be proffered." The plaintiff's counsel argued that Chiaro was not an expert but simply a "customer service guy" who would testify from personal experience about the mailing process. Further, the plaintiff's counsel asked that, if the court did consider Chiaro to be an expert, the plaintiff could be permitted to file a late expert disclosure, noting that the defendant had been aware of the substance of Chiaro's testimony since December. The court ruled on the motion to preclude as follows: "Well, I'm inclined to allow [the late disclosure of the expert witness]. Because I don't really see what the prejudice is, it's not like it's a surprise. This is an issue in the case. It apparently [has] been an issue in the case for some time. And the issues that have existed concerning, you know, the underlying issue that gave rise to this case. So, it can't—it doesn't come as any great surprise that mailing, and the difference

between—there wouldn't be some testimony concerning mailing or mail procedures. So, I don't really see what the prejudice is. Plus this person was disclosed back in December."

"We review a trial court's decision [regarding the admission of] expert testimony for an abuse of discretion. . . . We afford our trial courts wide discretion in determining whether to admit expert testimony and, unless the trial court's decision is unreasonable, made on untenable grounds . . . or involves a clear misconception of the law, we will not disturb its decision. . . . To the extent the trial court makes factual findings to support its decision, we will accept those findings unless they are clearly improper. . . . If we determine that a court acted improperly with respect to the admissibility of expert testimony, we will reverse the trial court's judgment and grant a new trial only if the impropriety was harmful to the appealing party. . . .

"Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . [T]o render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *State* v. *Edwards*, 325 Conn. 97, 123–24, 156 A.3d 506 (2017).

Practice Book § 13-4 provides in relevant part: "(a) A party shall disclose each person who may be called by that party to testify as an expert witness at trial . . . . (b) A party shall file with the court and serve upon counsel a disclosure of expert witnesses which identifies the name, address and employer of each person who may be called by that party to testify as an expert witness at trial . . . . (g) . . . (4) . . . A party who wishes to modify the approved Schedule for Expert Discovery or other time limitation under this section without agreement of the parties may file a motion for modification with the court stating the reasons therefor. Said motion shall be granted if: (A) the requested modification will not cause undue prejudice to any other party; (B) the requested modification will not cause undue interference with the trial schedule in the case; and (C) the need for the requested modification was not caused by bad faith delay of disclosure by the party seeking modification. . . . (h) A judicial authority may, after a hearing, impose sanctions on a party for failure to comply with the requirements of this section. An order precluding the testimony of an expert witness may be entered only upon a finding that: (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or to defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately

be addressed by a less severe sanction . . . .”

“Whether to allow a late disclosure is clearly within the discretion of the trial court.” *Baxter* v. *Cardiology Associates of New Haven, P.C.*, 46 Conn. App. 377, 389, 699 A.2d 271, cert. denied, 243 Conn. 933, 702 A.2d 640 (1997). An examination of the record in this case leads us to conclude that the trial court did not abuse its discretion in allowing the plaintiff to file an untimely expert disclosure.

The central issue in this case was whether the defendant had received the child support lien notice. In this regard, we note that the defendant was aware of the substance of Chiaro’s testimony in December, 2017, three months before trial. From December, 2017 to March, 2018, however, the defendant’s counsel did nothing to prepare to meet that testimony. They did not depose Chiaro or seek out their own expert to rebut his expected testimony. It was not until days before trial that the defendant’s counsel finally moved to preclude Chiaro from testifying.

During argument on the motion to preclude, the court clearly weighed the factors for determining whether Chiaro was an expert. The court stated: “I do think that his testimony does require some specialized knowledge. And for that reason, I think he—it’s pretty close, I have to say. But it does require some specialized knowledge of the processes employed by the United States Postal Service. Although, I mean, I have to say, it’s you know, March 20th and when was that trial management report filed?”

Thereafter, applying Practice Book § 13-4 (g) (4), the court explained that Chiaro’s testimony could not have come as a surprise to the defendant because of the disclosure in December, 2017. It explicitly stated, “I don’t really see what the prejudice is, it’s not like it’s a surprise,” and it noted that mailing procedures undoubtedly concerned the principal issue in the case. The court, indisputably, considered the defendant’s substantive knowledge of Chiaro’s testimony, which had been conveyed to him in the plaintiff’s trial management report, and decided that the defendant was not prejudiced by the late expert disclosure. The defendant, who never sought to depose Chiaro or move for a continuance for that purpose after the expert disclosure was filed, has not pointed to any aspect of the plaintiff’s proof or the defendant’s ability to meet it that was adversely affected by the late filing of the expert witness disclosure.

Indulging every reasonable presumption in favor of upholding the court’s ruling, we cannot conclude that the court abused its discretion in permitting the plaintiff to make a late disclosure of Chiaro as an expert witness.

## II

The defendant next claims that the trial court erred

in allowing the plaintiff's counsel to question him, in the presence of the jury, regarding a prior withdrawn action against him, which included a claim for conversion. Specifically, the defendant claims that all evidence relating to the prior action was inadmissible as evidence of bad character, propensity, or criminal tendency under § 4-5 of the Connecticut Code of Evidence.[5] He further contends that the evidence was not relevant and that its prejudicial effect outweighed its probative value, making it inadmissible under §§ 4-1 and 4-3 of the Connecticut Code of Evidence.[6] The plaintiff disagrees, arguing that the defendant failed to preserve this claim for appeal. We agree with the plaintiff that the defendant failed to preserve this claim for appeal, and, thus, it is not reviewable.

The following additional facts are necessary for the resolution of this claim. During the plaintiff's direct examination of the defendant, the following colloquy occurred:

"[The Plaintiff's Counsel]: I understand now. This isn't the only case where you're currently being sued for conversion, is it?

"[The Defendant]: Yes, it is.

"[The Plaintiff's Counsel]: Don't you have a case pending with Brignole & Bush?

"[The Defendant]: No, I do not.

"[The Plaintiff's Counsel]: Oh, that settled?

"[The Defendant]: How is it relevant? I mean—

"[The Defendant's Counsel]: Objection. Relevance."

Following the objection by the defendant's counsel, a sidebar was held, and the jury was then excused. The defendant's counsel then explained to the court as follows: "Your Honor, if I may, as you're going through [the complaint], I'm looking up the case right now, it was withdrawn by the plaintiff as to all defendants on March 20th of this year." The court requested that the question at issue be read back. After hearing the question again, the following colloquy occurred:

"The Court: Okay. Well, you want to answer the—the question . . . or do you want to—I mean—or do you want to have her rephrase the question?

"[The Defendant]: No, I want to—

"[The Defendant's Counsel]: Yeah, he—he did answer that it was—

"The Court: When this trial started on March 20th, you know, this—when the jury was selected in this case, this case was pending.

"[The Defendant]: It's no longer pending. You can't—they've heard—

"The Court: I mean, I'll have her rephrase the

question.

"[The Defendant's Counsel]: *Oh, yeah. I want to get into it.* They heard—they heard— they heard what they heard, so now it calls for an explanation. It was taken completely out of context.

"The Court: I'm sorry?

"[The Defendant's Counsel]: It was—it's—it was taken completely out of context.

"The Court: Well—

"[The Plaintiff's Counsel]: You mean the case was actually, pending.

"The Court: —that's not the answer to the question, so let's get—I'll ask you to rephrase the question.

"[The Plaintiff's Counsel]: Okay.

"The Court: And let's see what happens." (Emphasis added).

The jury then returned and the plaintiff's counsel rephrased the question as follows:

"[The Plaintiff's Counsel]: Did you recently resolve another pending case you had for conversion?

"[The Defendant]: Yes.

"[The Plaintiff's Counsel]: What happened in that case?"

The defendant then explained what had happened in the conversion case as follows: "That case involved a lawyer that I took on in 2014 . . . who left his former firm, Bringnole, Bush & Lewis. Upon leaving that firm he took over, roughly, twenty-five files from that firm that were his personal files that—that clients who came in to see him, with permission, all the proper documentation in order, he brought those over to my firm, and then there was a fee dispute as to the [attorney's] fees on those cases.

"As the principal, meaning the owner of my law firm, and [the attorney] . . . now worked for me, I was sued in that capacity; so, really, I had no—no involvement whatsoever in any of the twenty-five files at all. . . . [W]e eventually came to an agreement as to the fee division of the [attorney's fees] that were in escrow, and the case was withdrawn." At no point after the question was rephrased did the defendant's counsel put on the record that he was maintaining or renewing his objection. Further, he did not request a limiting instruction.

We review evidentiary claims pursuant to an abuse of discretion standard. "Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption

will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *O'Neil*, 67 Conn. App. 827, 831, 789 A.2d 531 (2002).

At the outset, we must address the plaintiff's claim that the defendant failed to preserve this claim for appellate review. "Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 540, 846 A.2d 847 (2005). The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5. "In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that counsel must object to a ruling [on] evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal." (Internal quotation marks omitted.) *State* v. *Sun*, 92 Conn. App 618, 630, 886 A.2d 1227 (2005). "Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 30, 807 A.2d 955 (2002). Furthermore, "[a]n objection to a question on a specific ground is not an objection to a similar question later. *Sears* v. *Curtis*, 147 Conn. 311, 313, 10 A.2d 742 (1960); *State* v. *Rios*, 171 Conn. App. 1, 38–39, 156 A.3d 18, cert. denied, 325 Conn. 914 [159 A.3d 914] (2017)." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) §1.25.2, p. 89.

The defendant's claim on appeal is unpreserved for two reasons. First, after the initial objection by the defendant's counsel, the defendant insisted from the witness stand that he be allowed to answer the question by the plaintiff's counsel about the other conversion action to explain what had led to the action and how it was resolved. In so doing, he expressly indicated his agreement with the court's proposed course of action, which was to allow the plaintiff's counsel to rephrase her question, correctly noting that the action was no longer pending. At no point after the question was rephrased did the defendant's counsel object.

Second, assuming, arguendo, that the defendant's counsel did properly object to the initial question by the plaintiff's counsel concerning the other conversion action, the defendant's claim on appeal is, nonetheless, unpreserved. "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. . . . To permit a party to raise a different ground on appeal than was raised during

trial would amount to 'trial by ambuscade,' unfair both to the trial court and to the opposing party." (Citations omitted.) *State* v. *Sinclair*, 197 Conn. 574, 579, 500 A.2d 539 (1985). Moreover, our Supreme Court has held that an objection to proffered evidence on the ground of relevance is insufficient to raise or to preserve a claim that it is inadmissible as improper evidence of prior misconduct. See id., 578–80. In the present case, the objection before the trial court was on the ground of relevance. On appeal, by contrast, the defendant claims that the question concerning the conversion action was inappropriate because "evidence of prior misconduct cannot be used to suggest that a defendant has a bad character or propensity for criminal behavior."

The present claim is not the same claim that the defendant initially raised in the trial court concerning the plaintiff's questioning of him as to the other conversion action. To consider that claim on appeal would be to allow a trial by ambuscade. For this reason as well, we decline to review this claim on appeal.

### III

Finally, we turn to the defendant's claim that the trial court erred in allowing the biological mothers of Rivera's two minor children to testify as to Rivera's child support arrearages. Specifically, the defendant contends that the testimony of both mothers was "irrelevant and immaterial to the factual issues surrounding the case" and, thus, that it was admitted in violation of § 4-1 of the Connecticut Code of Evidence. He further contends that allowing both mothers to testify was "unfairly prejudicial, confusing, and constitut[ed] needless presentation of cumulative evidence" and, thus, that it was admitted in violation of § 4-3 of the Connecticut Code of Evidence.[7] The plaintiff disagrees, arguing that the challenged testimony was not only relevant but essential to proving the disputed allegations of the complaint. We agree with the plaintiff.

Certain additional facts are necessary to the resolution of this claim. On March 15, 2018, the defendant filed motions in limine requesting that the trial court prohibit Maribel Diaz and Margo Rivera, the biological mothers of Rivera's two minor children, from testifying as fact witnesses as to the arrearages owed to them by Rivera. The defendant claimed generally that the only contested issue at trial was whether the lien notice allegedly sent to him by the plaintiff in fact had been delivered to him, as the plaintiff had alleged. On that basis, the defendant argued that the mothers should be prohibited from testifying because their testimony was irrelevant to the issue of delivery and would only confuse the issues before the jury. On March 20, 2018, the court held a hearing on the motions in limine. There, the plaintiff argued that the mothers' testimony was relevant because the defendant, in his amended answer and special defenses, had not admitted its allegation

that Rivera owed child support for the two children but, instead, had left the plaintiff to its proof.[8] Therefore, the plaintiff argued, the mothers' testimony was necessary to establish that Rivera actually owed them child support, as it had alleged. Ultimately, the trial court denied the defendant's motion to preclude the mothers' testimony, and the mothers testified at trial.

During the plaintiff's direct examination of Margo Rivera, the following colloquy took place:

"[The Plaintiff's Counsel]: And, [Margo] Rivera, did you end up with a child support order as part of your divorce [from Rivera]?

"[Margo Rivera]: Yes. . . .

"[The Plaintiff's Counsel]: Are you receiving the court-ordered child support?

"[Margo Rivera]: No. . . .

"[The Plaintiff's Counsel]: And do you recall what he owed you at the time the case settled, his personal injury case?

"[Margo Rivera]: I think it was, like, $10,000 or 9000. I don't really—I don't recall the specific amount.

"[The Plaintiff's Counsel]: It's a lot more than that now, though, isn't it?

"[Margo Rivera]: Yes."

During the plaintiff's direct examination of Diaz, the following colloquy occurred:

"[The Plaintiff's Counsel]: And do you have any children?

"[Diaz]: Yes, I have one son. . . . Austin Rivera.

"[The Plaintiff's Counsel]: Who's Austin's father?

"[Diaz]: Pedro Rivera. . . .

"[The Plaintiff's Counsel]: Had you been to court with . . . Rivera to get an initial order of child support?

"[Diaz]: Yes.

"[The Plaintiff's Counsel]: Do you have a current order of child support?

"[The Defendant's Counsel]: Your Honor, I'm going to object to this line of questioning as to relevance . . . .

"The Court: Yeah, I'm going to—I'm going to sustain the objection. . . .

* * *

"[The Plaintiff's Counsel]: Did you receive anything toward your past due child support from the personal injury settlement?

"[Diaz]: No, I did not.

"[The Plaintiff's Counsel]: How much child support

is currently owed to you by . . . Rivera? . . .

"[Diaz]: Close to $8000."

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 328–29, 838 A.2d 135 (2004).

"The law defining the relevance of evidence is well settled. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . The trial court has wide discretion to determine the relevancy of evidence . . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) Id., 332; see also Conn. Code Evid. § 4-1.

A review of the record shows that both mothers' testimony was relevant to an essential element of the case, specifically, whether Rivera owed child support for the children of Margo Rivera and Diaz. The defendant argued, both at trial and in his appellate brief, that he did not deny the allegation that child support arrearages were owed by Rivera. In his amended answer and special defenses, however, the defendant neither admitted nor denied the allegation, but left the plaintiff to its proof. On that basis, the mothers' testimony bore directly on the contested issue of whether child support arrearages were actually owed to each of them, which was an *essential element* of the plaintiff's case. Consequently, the court did not abuse its discretion when it allowed the mothers to testify as to the arrearages owed to them by Rivera.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court order to pay child support for his two minor children arose from two separate family court cases: (1) a dissolution action involving a custodial parent named Margo Rivera; and (2) a paternity petition involving

a custodial parent named Maribel Diaz.

[2] The lien notice stated: "Pursuant to § 52-362d (d) of the Connecticut General Statutes this is notification to immediately withhold any monies due to the obligor PEDRO JUAN RIVERA from the distribution of a lump sum settlement or award.

"This notice certifies that the above referenced obligor is subject to a child support order of the Superior Court or Family Support Magistrate and the order is payable through this State of Connecticut IV-D Agency. The child support lien shall be paid to the full extent of the proceeds that are due PEDRO JUAN RIVERA."

[3] The $3000 collected by Support Enforcement Services was split equally between the two mothers, $1500 each.

[4] General Statutes § 52-362d provides in relevant part: "(a) Whenever an order of the Superior Court or a family support magistrate for support of a minor child or children is issued and such payments have been ordered to be made to the state acting by and through the IV-D agency and the person against whom such support order was issued owes past-due support in the amount of five hundred dollars or more, the state shall have a lien on any property, real or personal, in which such person has an interest to enforce payment of such past-due support. . . .

"(d) Whenever an order of the Superior Court or a family support magistrate of this state . . . for support of a minor child or children is issued and such payments have been ordered through the IV-D agency, and the obligor against whom such support order was issued owes overdue support under such order in the amount of five hundred dollars or more, the IV-D agency . . . or Support Enforcement Services of the Superior Court may notify . . . (2) any person having or expecting to have custody or control of or authority to distribute any amounts due such obligor under any judgment or settlement . . . . Upon receipt of such notice, such . . . person . . . shall withhold delivery or distribution of any such property, benefits, amounts, assets or funds until receipt of further notice from the IV-D agency. . . ."

[5] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) General rule. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person except as provided in subsection (b). . . .

"(c) Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ."

[6] Section 4-1 of the Connecticut Code of Evidence provides: "Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.)

Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

[7] At trial, however, the defendant failed to raise a claim or object on the basis that the probative value of the testimony of either mother was outweighed by the danger of unfair prejudice, and, thus, the defendant failed to preserve this claim on appeal.

In order to preserve this claim for appeal, the defendant's counsel should have argued that, even if the mothers' testimony was relevant, it should, nonetheless, have been excluded because its probative value was outweighed by the danger it posed of unfair prejudice; however, they did not. Moreover, the defendant's motions in limine to preclude the testimony of Margo Rivera and Maribel Diaz argued that their testimony was irrelevant and should be excluded under § 4-1 of the Connecticut Code of Evidence, and, therefore, the motions in limine also did not preserve for appeal a claim pursuant to § 4-3 of the Connecticut Code of Evidence.

We, therefore, decline to review that portion of the defendant's claim in which he argues that the probative value of the testimony was outweighed by its danger of unfair prejudice.

[8] Practice Book § 10-46 provides in relevant part: "The defendant in the answer shall specially deny such allegations of the complaint as the defendant intends to controvert, admitting the truth of the other allegations

. . . ."

Practice Book §13-23 (a) provides in relevant part: "An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless such party states that he or she has made reasonable inquiry and that the information known or readily obtainable by him or her is insufficient to enable an admission or denial. . . ."

On this basis, the rules of practice provide three ways in which to respond to allegations in a complaint: to admit, to deny, or to allege lack of information. See generally Practice Book §§ 10-46 and 13-23 (a).

In the defendant's answer, he stated: "[T]he defendant . . . has insufficient knowledge to form a belief as to the truth and, therefore, denies same and leaves the plaintiff to [its] proof." This statement conveys both that he denies the allegation and that he has a lack of information to either admit or deny the allegation. Regardless of whether the defendant denied or asserted a lack of knowledge, the end result is the same: the defendant left the plaintiff to its proof.

---